IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Chief Judge

Civil Action No. 06-AP-00941-LTB

DAVID R. JONES,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

      Defendant.

_____

## ORDER

_____

Plaintiff David R. Jones appeals Defendant's (the "Commissioner") final administrative decision denying his claim for benefits under the Social Security Act (the "Act"). Jurisdiction in this appeal is proper pursuant to 42 U.S.C. § 405(g). Oral argument would not materially assist in the determination of this appeal. After consideration of the briefs and the record, I reverse the Commissioner's decision and remand the case for further proceedings as set forth below.

**I. Statement of the Case**

Plaintiff applied for disability insurance benefits on February 4, 2003 and for supplemental benefits on July 24, 2003. Following the initial denial of benefits, a hearing was held before an administrative law judge (the "ALJ") on June 21, 2004. On February 24, 2005, the ALJ issued an unfavorable decision denying Plaintiff's claim for benefits. Plaintiff sought review of the ALJ's decision by the Appeals Council. The Appeals Council denied Plaintiff's request for review, thereby rendering this decision the Commissioner's final decision for purposes of my review. Plaintiff timely filed this appeal seeking review of the Commissioner's final decision.

## II.  Statement of Facts

Plaintiff was 48 years old at the time of the Commissioner's decision.  Administrative Record ("AR") 103.  Plaintiff has an eleventh grade education (AR 122) and has worked in the past as a truck driver, heavy equipment operator, laborer, and mechanic.  AR 107.  In July of 2000, Plaintiff was driving a tractor cutting grass on the side of a highway when he was rear-ended by a truck, causing his tractor to roll down a hill.  AR 179-82.  Plaintiff was initially treated for a chest wall contusion, rib fracture, and lacerations.  AR 398.   Plaintiff subsequently developed neck, shoulder and back pain.  As a result of these conditions, Plaintiff alleges that he became disabled on December 20, 2001.  AR 116.

Following Plaintiff's accident in July of 2000, he was treated by Victor Lopez, M.D.  On August 3, 2000, Dr. Lopez released Plaintiff to return to work with some restrictions.  AR 394.  Dr. Lopez then placed Plaintiff at maximum medical improvement with no permanent work restrictions on September 14, 2000.  AR 381.  On February 22, 2001, however, Plaintiff returned to Dr. Lopez with complaints of left shoulder pain since the time of  the accident.  AR 378.  Dr. referred Plaintiff to Field Blevins, M.D., an orthopedic surgeon  AR 324-73.

Around this same time period, J.Stephen Grey, M.D. conducted an independent medical examination of Plaintiff in connection with his worker's compensation claim and concluded that his left shoulder problems were related to the work-related injury he suffered in July of 2000.  AR 159-167.  Dr. Grey recommended further treatment and evaluation by Dr. Blevins (AR 165), and Dr.  Blevins performed arthroscopic shoulder surgery on Plaintiff in April of 2002.  AR 249.  Plaintiff's postoperative diagnoses were left shoulder impingement, adhesive capsulitis, and arthritis of the glenohumeral joint.  AR 263.

Following the surgery on his left shoulder, Plaintiff complained to Dr. Blevins of pain on the left side of his neck.  AR 422.  An MRI taken on September 12, 2002 showed that Plaintiff suffered from moderate degenerative disk disease at the C3-4 level and moderate to severe degenerative disk disease at the C5-6 level, with moderate neural foraminal narrowing at both levels.  AR 249.  Shortly thereafter, on October 14, 2002, Plaintiff went to the emergency room complaining of severe back pain following an incident where his legs gave way after they were brushed by a dog.  AR 335.  An X-ray taken at that time showed degenerative narrowing at the "5-1" disk space, and Plaintiff was prescribed ice massage and pain medication.  AR 243; 333 & 335.  In a follow-up visit on October 17, 2002, Dr. Blevins gave Plaintiff an injection for shoulder pain and indicated that Plaintiff should be seen by a spine specialist.  AR 420.

On November 8, 2002, Cyril A. Bohachevsky, M.D., evaluated Plaintiff in connection with his back, neck, and shoulder problems.  AR 209-11.  Dr. Bohachevsky assessed Plaintiff with cervical spondylosis, cervical foraminal stenosis, cervical facet syndrome, lumbar degeneration, and lumbar facet syndrome.  AR 210.

Plaintiff underwent a second independent medical examination on November 15, 2002. The physician who performed the IME, Matthew R. Brodie, M.D., noted that Plaintiff was suffering from, among other things, residual left shoulder impingement; adhesive capsulitis; cervical degenerative disk disease; right upper extremity neuropathy; possible radiculitis of the left shoulder; lumbar spine pain; and possible psychogenic disorder.  AR 197.  Dr. Brodie further opined that Plaintiff's neck, left shoulder, and low back complaints required additional treatment but that only his shoulder injury was covered by his worker's compensation claim.  AR 201-2.

On March 29, 2003, George W. Trombley, Jr., M.D., a State agency physician, performed

3

a residual functional capacity assessment of Plaintiff wherein he stated that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand and walk for 4 hours in an 8 hour work day provided that he used a cane and was limited to short distances; sit for 6 hours in an 8 hour work day; occasionally push and pull with his upper extremities; occasionally climb, stoop, kneel, crouch, and crawl; frequently balance; and perform limited manipulative activities such as reaching and handling.  AR 213-15.  Dr. Trombley further stated that Plaintiff had to avoid extreme cold, vibration, and hazards.  AR 216.

On April 2, 2003, Dr. Lopez performed an impairment rating on Plaintiff wherein he stated that Plaintiff had a 20% impairment of the upper left extremity or a 12% whole person impairment.  AR 319.  On this same date, Dr. Lopez completed a Medical Source Statement in which he stated that Plaintiff could lift up to 100 pounds occasionally, 50 pounds frequently, and 20 pounds continuously; stand, walk, and sit 4 hours at a time for 8 hours total; bend, stoop, squat, and reach with his right arm frequently; crawl and kneel occasionally; and use his hands for repetitive grasping, pushing, pulling, and fine manipulations.  AR 316-17.  Dr. Lopez further stated that Plaintiff should not reach at all with his left arm.  AR 316-17.

On April 21, 2004, Plaintiff was evaluated by Dr. Blevins.  Dr. Blevins concluded that Plaintiff's neck and shoulder conditions were similar to when he had treated him the previous year but that his pain and symptoms were subjectively worse.  AR 415.  Dr. Blevins also concluded that Plaintiff was suffering from adhesive capsulitis, a possible rotator cuff tear, glenohumeral arthritis and impingement.  AR 415.

4

### III.  Standard of Review

In reviewing the Commissioner's decision I determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.  *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1992); *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Hamilton, supra,* 961 F.2d at 1498.  I "may neither reweigh the evidence nor substitute [my] discretion for that of the Administrative Law Judge."  *Kelley v. Chater,* 62 F.3d 335, 337 (10th Cir. 1995).  Where evidence as a whole can support either the Commissioner's decision or an award of benefits, the Commissioner's decision must be affirmed.  *See Ellison v. Sullivan,* 99 F.2d 534, 536 (10th Cir. 1990).

### IV.  Analysis

Plaintiff raises the following issues on appeal: (1) that the ALJ erred by not considering Plaintiff's complaints of lower back pain; (2) that the ALJ's RFC determination is not supported by substantial evidence; and (3) that the ALJ erred in determining that Plaintiff has a high school education.

### A.  Plaintiff's Complaints of Lower Back Pain

Plaintiff argues that the ALJ erred in not considering his complaints of lower back pain. The first determination I must make then is whether the record demonstrates that the ALJ gave these complaints proper consideration.

Plaintiff's assertion that the ALJ did not consider his complaints of lower back pain is predicated on the fact that the ALJ did not list this condition as a severe impairment in the second

step of the sequential process.  *See* 20 C.F.R.§404.1520 (claim for disability requires

consideration of five factors in sequence, the second of which is whether the claimant had a severe

impairment).  Indeed, the ALJ's analysis of Plaintiff's impairments begins with the assumption that

Plaintiff's disability claim is predicated solely on degenerative disk disease and an injured left

shoulder (AR 29) whereas a review of Plaintiff's application for disability, testimony at the

hearing, and medical records indicate that Plaintiff's claim for disability was also predicated on

pain in his lower back.  The ALJ did, however, discuss the clinical findings regarding Plaintiff's

lower back pain and relied on a residual functional capacity assessment that incorporated these

complaints.  AR 29 & 31.  Nonetheless, although these facts suggest that the ALJ took Plaintiff's

complaints of lower back pain into account to some degree, I am unable to conclude from the

record before me that the ALJ gave full and proper consideration to this issue.  I am also unable

to conclude as urged by the Commissioner that any  failure by the ALJ in this regard amounts to

harmless error.  Accordingly, it is necessary to remand this case to the ALJfor clarification and/or

further consideration regarding Plaintiff's complaints of lower back pain.  *See Baker v. Bowen,*

886 F.2d 289, 291 (10th Cir. 1989) (where the record is unclear as to whether the ALJ applied

the appropriate standard by considering all of the evidence before him, reversal and remand is the

proper remedy).

## B.  The ALJ's RFC Determination

Plaintiff argues that the ALJ'd determination of Plaintiff's residual functional capacity was

in error because it fails to account for Plaintiff's complaints of lower back pain and is not

supported by other medical evidence, including Plaintiff's limitations in his left arm and hand.

Consistent with the analysis set forth above, I agree that clarification and/or further analysis of

Plaintiff's RFC is warranted based on ambiguities in the record regarding the consideration given to Plaintiff's complaints of lower back pain.  I also conclude that further consideration of Plaintiff's RFC by the ALJ is warranted based on inconsistencies in the record regarding Plaintiff's ability to stand and walk during an 8 hour workday.

First, in assessing Plaintiff's RFC, the ALJ indicated that he was assigning more weight to the opinion of Dr. Twombley than that of Dr. Lopez because the evidence of record did not support a finding that Plaintiff retained the ability to perform physical exertion at the level indicated by Dr. Lopez.  AR 31.  The ALJ proceeded, however, to conclude that Plaintiff could sit, stand or walk for 6 hours in an 8 hour work day.  AR 32.  This conclusion is seemingly at odds with Dr. Twombly's opinion that Plaintiff could stand or walk for 4 hours in an 8 hour work and more consistent with Dr. Lopez's opinion that Plaintiff could sit, stand or walk for 4 hours at a time, for a total of 8 hours.  The ALJ's conclusion regarding Plaintiff's ability to stand and walk is particularly significant because he ultimately concluded that Plaintiff is capable of performing a full range of light work, which "requires a good deal of standing or walking" for "approximately 6 hours of an 8-hour workday."  20 C.F.R. § 404.1567(b); SSR 83-10.

Additionally, the ALJ's assessment of Plaintiff's RFC was predicated, in part, on Plaintiff's purported testimony that he walked 6 to 8 miles every day on a ranch where he served as caretaker.  AR 31.  In fact, Plaintiff testified that he *drove* 6 to 8 miles every day on this ranch. AR 61-2.

Accordingly, on remand, the ALJ must review his findings regarding Plaintiff's RFC in view of Plaintiff's lower back pain, the relevant expert opinions, and Plaintiff's actual testimony at the hearing.  It is unnecessary, however, for the ALJ to give further consideration to his findings

regarding Plaintiff's fine motor skills because there is substantial evidence in the record to support these findings.

## C.  Plaintiff' Level of Education

Plaintiff argues that the ALJ erred in his determination that Plaintiff has a high school education.  Indeed, the only evidence of record indicates that Plaintiff has a limited education. AR 122 & 513.  *See* 20 C.F.R. 404.1564(b)(3) &(4) (7th through 11th grade level of formal education is generally considered a limited education whereas high school education means the claimant possesses certain abilities acquired through formal schooling at a 12th grade level or above).  The question then becomes whether this error by the ALJ constituted harmless error.

In determining that Plaintiff was capable of performing the jobs of call-out operator, furniture retail consultant, and information clerk, the ALJ relied largely on the testimony of a vocational expert.  AR 33-4.  It is unclear from the record whether this expert was also mistaken about Plaintiff's educational level.  AR 68-71.  In any event, the ALJ's conclusion that Plaintiff was capable or performing jobs existing in significant numbers in the national economy was also based on consideration of Plaintiff's personal characteristics, including his educational background.  AR 34.  Under these circumstances, it would be speculation to conclude that the ALJ's error regarding Plaintiff's level of education was harmless and would not have changed the outcome of Plaintiff's disability claim.  On remand then, the ALJ must also review his determination at step five of the sequential process that Plaintiff is capable of performing jobs existing in significant numbers in the national economy in view of his limited education and modify his findings as necessary.

For the reasons set forth above, IT IS ORDERED that

1.  The Commissioner's decision is REVERSED; and

2.  The case is remanded to the Commissioner with direction to remand it to the ALJ for

further proceedings consistent with this Order.


Dated: March ___9___, 2007 in Denver, Colorado.

                                        BY THE COURT:


                                            s/Lewis T. Babcock
                                        LEWIS T. BABCOCK, CHIEF JUDGE